# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MINA RAYMOND, ET AL.**                    **CIVIL ACTION NO.**

**VERSUS**                                                    **20-352-BAJ-EWD**

**UNUM GROUP, ET AL.**


Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 23, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MINA RAYMOND, ET AL.**                    **CIVIL ACTION NO.**

**VERSUS**                                  **20-352-BAJ-EWD**

**UNUM GROUP, ET AL.**

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand (the "Motion"), filed by Mina Raymond ("Mina") and Steven Raymond (collectively, "Plaintiffs").[1] The Motion is opposed by Defendants Paul Revere Life Insurance Company ("Paul Revere"), New York Life Insurance Company ("New York Life"), and Unum Group and/or Unum, the Benefit Group (collectively, "Defendants").[2] Plaintiff has filed a reply memorandum.[3] As explained more fully below, Defendants have established that federal subject matter jurisdiction exists and none of Plaintiffs' arguments in support of remand are availing; therefore, the undersigned recommends[4] that the Motion be denied and this matter referred to the magistrate judge for a scheduling conference.[5]

---

[1] R. Doc. 26 *and see* Plaintiffs' Reply at R. Doc. 32.

[2] R. Doc. 29. As will be discussed herein, there is some confusion by Plaintiffs over the identity of the correct Unum entity, *i.e.*, Unum Group; Unum, the Benefit Group; and/or Unum, the Benefits Center, although only the first two entities are named in the Petition and First Amended Petition. *See* R. Doc. 1-1, p. 3 ("Unum Group" referenced in the original Petition's caption versus "Unum The Benefit Group" referenced in the substantive allegations), R. Doc. 26-6, p. 2 (First Amended Petition referencing "Unum, the Benefit Group"), *and see* R. Doc. 24-2, p. 1, where Plaintiffs state that their claims are asserted/will be asserted against Unum Group and the Unum, the Benefit Center. Defendants allege that Unum Group is the parent company of Paul Revere and is not a proper defendant in this case, but they are not seeking its dismissal at this time, and, importantly, the other two entities are not actual entities at all, as supported by the declaration of Unum Group's Corporate Secretary. R. Doc. 24, p. 3; R. Doc. 24-2 (Declaration of Paul Julienne).

[3] R. Doc. 32.

[4] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, No. 14-30925, 819 F.3d 758, 765 (5th Cir. 2016).

[5] Entry of a scheduling order was deferred pending resolution of the Motion. *See* R. Doc. 20.

## I.    Facts and Procedural Background

This matter involves a dispute between Plaintiffs and Defendants over disability benefits governed by a Premier Disability Insurance Policy ("Policy") issued to Mina on or about March 24, 1988 by New York Life, and subsequently administered by Paul Revere and Unum Group or Unum, the Benefit Group, as the alleged agent of Paul Revere.[6]

The pertinent facts for the purposes of the instant Motion are as follows: Plaintiffs allege that the Policy is an "own occupation policy," which provides for payment of monthly income benefits for total disability ("Total Disability Benefits"), and supplemental benefits called social insurance supplemental benefits ("SIS Benefits"), if there is a finding that an insured is totally disabled, *i.e.*, the insured has a disability that prevents her from performing the substantial or material duties of her regular job.  According to Mina, the Policy permits an insured to obtain other employment and earn other income in the event of disability without losing eligibility for Total Disability Benefits or SIS Benefits, so long as the other employment does not constitute the insured's regular job.[7]  Furthermore, Plaintiffs contend that the Policy essentially provides that, throughout the Benefit Term, which is initiated by the payment of benefits, Policy premiums are waived.[8]

On August 6, 1996, Mina was diagnosed with multiple sclerosis, a permanent neuromuscular condition, while employed at her regular job as a retail pharmacist.  New York Life determined that Mina was incapable of returning to her regular job of retail pharmacist and was totally disabled under the Policy. Mina began receiving Total Disability Benefits and SIS Benefits

---

[6] R. Doc. 1-1, p. 4.  Plaintiffs have since contended that the correct entity is "Unum, the Benefits Center," which has not been named a defendant.  R. Doc. 24, pp. 1-2.
[7] R. Doc. 1-1, p. 5.
[8] R. Doc. 26-6, p. 3.

in January 1997.[9]  At some point in early 1997 (and continuing through the present), Mina resumed working as a pharmacist on a part-time basis while continuing to receive benefits, allegedly with the approval of New York Life.[10]  Plaintiffs contend that Defendants wrongfully ceased payment of Mina's SIS Benefits from July 2001 through January 2013, which Plaintiffs were not aware of at the time.[11]  Further, several times during the benefit term, Defendants requested information from Mina regarding her duties and her income and continued to approve payment of her benefits under the Policy.[12]  That changed on May 14, 2019, when, according to Plaintiffs, Defendants issued a reservation of rights letter advising that, as a result of Defendants' analysis of Mina's income, all past and future payments were conditional under the Policy.[13]  Defendants reviewed additional information from Mina's physicians and, in January 2020, Defendants advised Plaintiffs that their review indicated that Mina was performing her regular job because she had started working increased hours (albeit in a reduced capacity), and her tax returns indicated that her actual income over the prior five years was much higher than the income she had reported to Defendants. Thus, Mina appeared to be disqualified for benefits under the applicable terms of the Policy.[14]  In response, Plaintiffs' attorney sent a representation letter to Defendants seeking Mina's claims file.[15]  According to Plaintiffs, "On March 31, 2020, Defendants cancelled the Policy, and sought recovery of $225,578.91 in benefits paid to Plaintiff Mina Raymond between 2014 and February 2020, based solely on an evaluation on her income, despite clear evidence that she remained Totally Disabled on a permanent basis."[16]

---

[9] R. Doc. 1-1, p. 6.
[10] R. Doc. 1-1, pp. 7-8.
[11] R. Doc. 1-1, p. 9.
[12] R. Doc. 1-1, p. 10.
[13] R. Doc. 1-1, p. 10.
[14] R. Doc. 1-1, pp. 11-12; R. Doc. 24-1, pp. 3-5.
[15] R. Doc. 26-4, pp. 12-13.
[16] R. Doc. 1-1, p. 12.  The March 31, 2020 correspondence is not in the record.

On April 27, 2020, Plaintiffs filed their original Petition for Damages ("Petition") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge alleging Defendants breached the terms of the Policy and their fiduciary duties, as well as engaged in bad faith conduct, in their wrongful determination that Mina was employed in her regular job and their wrongful failure to pay Mina benefits under the Policy, as well as in their wrongful attempts to recover past benefits paid from 2014 through 2020 and their wrongful failure to pay Mina for SIS Benefits from July 2001 through January 2013. Mina additionally alleged that Defendants harassed her, invaded her privacy, caused her emotional distress, and were unjustly enriched at her expense, all of which entitled to her damages, including penalties and attorney's fees pursuant to La. R.S. 22:1821.[17]

After the Petition was filed, Plaintiffs received seven premium notices from Defendants, seeking payment of $4,458.65 for past-due premiums owed for 2014 through 2020.[18]  On May 7, 2020, Mina responded to the premium notices, contending that the premiums were waived under the Policy due to Mina's continuing total disability.[19]  On May 13, 2020, Defendants stated that, based on their prior determination that Mina was performing her regular job and had not suffered the requisite loss of income under the Policy, Mina was not qualified for disability benefits under the Policy and was also not entitled to waiver of premiums as of 2014. Defendants advised Mina that, if she wanted to keep her Policy in force, all premiums were due by June 10, 2020.[20]  In response, Plaintiffs filed their First Supplemental and Amending Petition for Damages ("First Amended Petition") on May 21, 2020, newly asserting that Defendants wrongfully sought payment of these previously-waived premiums, which Plaintiffs contend remained waived under the

---

[17] R. Doc. 1-1, pp. 17-19.  Steven Raymond alleged loss of consortium and emotional distress damages. *Id.* at p. 19.
[18] R. Doc. 26-4, pp. 2-8. Plaintiffs contend that, although these notices are dated April 11, 2020, Plaintiffs did not receive them until after the Petition was filed.  R. Doc. 26-6, p. 2.
[19] R. Doc. 26-4, p. 1.
[20] R. Doc. 26-5, p. 2.

Policy.[21]   On June 9, 2020, Plaintiffs' filed a Motion to Deposit Funds into the Registry of the

Court ("Motion to Deposit"), which was granted the same day.  Based on that Order, Plaintiffs

tendered $4,458.65 into the registry of the state court.[22] The Motion to Deposit states, "Plaintiffs

now, in an abundance of caution, move to tender $4,458.65, the total amount of the Policy

Premiums stated by the Premium Notices unilaterally issued by the Defendants into the registry of

the Court so that the Court may determine their liability therefore.  Plaintiffs request that said funds

be held in trust until the coverage dispute is resolved by this Honorable Court….Plaintiffs

expressly disclaim liability for any policy premium on the basis of waiver by Defendants, and

reserve all rights to the return of the funds on deposit upon judgment in this matter in their favor."[23]

Defendants sent a letter directly to Mina, also dated June 9, 2020, notifying her that her Policy

lapsed, effective March 24, 2014, due to nonpayment of the premiums.[24]   Subsequent email

correspondence between counsel for the parties indicates that Plaintiffs' counsel advised

Defendants that the purpose of the tender of funds was Plaintiffs' attempt to prevent cancellation

of the Policy due to non-payment of the premiums and to have the state court decide whether the

premiums were owed.[25]   Defendants responded that the tender "will not be sufficient to keep the

policy in force.  If Ms. Raymond does not want the policy to be cancelled, the premiums will have

to be paid as required."[26] Plaintiffs maintain, however, that the non-payment of premiums was not

grounds for cancellation and Defendants' June 9, 2020 letter did not cancel the Policy; rather, "the

---

[21] R. Doc. 26-6, pp. 1-5.
[22] R. Doc. 26-7, pp. 7-10 and *see* receipt at R. Doc. 27-8.
[23] R. Doc. 26-7, p. 8.
[24] R. Doc. 26-9.  A handwritten note on the letter, presumably written by Mina, appears to indicate that she received the letter on June 13, 2020.
[25] R. Doc. 26-10, pp. 1-2.
[26] R. Doc. 26-10, p. 1.

notice of cancellation [is] a pretext by Defendants to avoid liability for future benefits under the Policy."[27]

On June 10, 2020, Defendants removed the matter to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, (and ultimately, filed a counterclaim against Plaintiffs for return of the benefits paid).[28]  Nine days after that, Plaintiffs moved to deposit $4,458.56 into the registry of this Court: "[p]ursuant to 28 USC Sec 2041-2042, and Local Civil Rule 67."[29] Like the Motion to Deposit filed in the state court, in this Court Plaintiffs disclaimed liability for any premiums, but sought to deposit the funds "out of an abundance of caution," so that this Court can determine whether any premiums were owed.[30]  Defendants did not oppose this motion.

Following removal, the parties filed a number of pleadings regarding a various procedural issues that were discussed and ruled upon during the July 24, 2020 telephone hearing and conference with the undersigned, all of which is discussed in detail in the Hearing Report and Order.[31]  Of importance to the instant matter, however, Plaintiffs made an oral motion to withdraw their Motion to Deposit, which was granted.[32]   Further, Plaintiffs attempted challenge to this Court's subject matter jurisdiction, which they attempted to raise via sur-reply brief,[33] which was found procedurally improper, so Plaintiffs were ordered to file a Motion to Remand regarding any jurisdictional issues by August 14, 2020.[34]  The parties were also ordered to confer to attempt to

---

[27] R. Doc. 3-1, p. 4.
[28] R. Doc. 1 and R. Doc. 9.
[29] R. Doc. 3 and *see* 28 U.S.C. § 2041 ("All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court. This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court"); 28 U.S.C. § 2402 ("No money deposited under section 2041 of this title shall be withdrawn except by order of court….") and Local Rule 67, setting forth this Court's procedures for receipt, deposit, and disbursement of funds deposited into the registry.
[30] R. Doc. 3-1, p. 4.
[31] R. Docs. 22-23.
[32] R. Doc. 22, p. 3.
[33] *See* R. Doc. 19-1.
[34] R. Doc. 22, p. 3.

reach a resolution on the identity of the correct Unum defendant(s) so that the Court could determine if complete diversity existed.[35] The parties filed their Joint Notice advising the Court of the identity and citizenship of the correct Unum defendant ("Joint Notice"),[36] and Plaintiffs timely filed the instant Motion, which Defendants oppose.[37]

## II.    Law and Analysis

### A.  Legal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[38] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[39] The removing parties have the burden to establish federal subject matter jurisdiction.[40] Remand is proper if at any time the court lacks subject matter jurisdiction.[41] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[42]

### B. The Notice of Removal and Supplemental Evidence Establish Diversity Jurisdiction

The Notice of Removal originally asserted that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as the Plaintiffs are citizens of Louisiana; Paul Revere is a corporate citizen of Massachusetts (place of organization) and Maine (principal place of business); New

---

[35] R. Doc. 22, p. 4.
[36] R. Doc. 24.
[37] R. Docs. 26, 29, 32.
[38] 28 U.S.C. § 1441(a).
[39] 28 U.S.C. § 1332(a)(1).
[40] *See Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 Fed. App'x 205, 207 (5th Cir. 2018).
[41] *See* 28 U.S.C. § 1447(c).
[42] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

York Life is a corporate citizen of New York (place of organization and principal place of business), and "Unum Group" is a corporate citizen of Tennessee (place of organization and principal place of business).[43] (In the Joint Notice (and their Affirmative Defenses), Defendants have since clarified that Unum Group is the parent company of Paul Revere, and is a corporate citizen of Delaware (place of organization) and Tennessee (principal place of business)).[44] Furthermore, the amount in controversy appeared to be met, as Plaintiffs' Petitions seek disability benefits of at least $75,000, in addition to other damages including penalties and attorney's fees.[45]

However, as discussed during the telephone conference, it was not entirely clear that complete diversity existed due to a discrepancy in the Petitions regarding the name(s) of the correct Unum entity ("Unum Group," as named in the caption of Plaintiffs' state court Petitions and whose citizenship was identified, versus "Unum, the Benefit Group" as named in the Petitions' substantive allegations but whose citizenship information was not provided in the Notice of Removal).[46] To further compound the confusion, Plaintiffs changed their minds regarding the correct Unum entity. Ultimately, in the Joint Notice, Plaintiffs stated that Unum Group has answered the lawsuit, is a proper defendant, and is diverse, and the other correct Unum entity is "Unum, the Benefits Center," not the previously-named "Unum, the Benefit Group."[47] Plaintiffs' Petitions do not currently name Unum, the Benefits Center and Plaintiffs do not know its citizenship, but Plaintiffs stated in the Joint Notice that they will amend their First Amended

---

[43] R. Doc. 1, ¶¶ VI-IX.

[44] *See* Affirmative Defenses at R. Doc. 9, p. 1 and R. Doc. 24, p. 3, n. 3. Defendants further stated that, while Paul Revere is the only proper defendant as the administrator of the Plan and the entity potentially bearing liability for any benefits and/or judgment due to Plaintiffs, Defendants are not moving for dismissal of Unum Group or New York Life at this time. *Id.* at pp. 2-5.

[45] R. Doc. 1, ¶¶ XII & XV and R. Doc. 1-1, pp. 18-19; R. Doc. 16-1, pp. 44-48.

[46] R. Doc. 1-1, p. 3 and ¶ 2 (original Petition); R. Doc. 16-1, p. 44 and p. 45, ¶ 78 (First Amended Petition).

[47] R. Doc. 24, pp. 1-2 *and see* R. Doc. 10, p. 1.

Petition to clarify that Unum Group and Unum, the Benefits Center are the correct Defendants if the matter is not remanded.[48]

In Response, Defendants explained that, while Unum Group is an entity diverse from Plaintiffs, "Unum, the Benefits Center" and "Unum, the Benefits Group," are not actual entities. In support, Defendants filed a declaration under penalty of perjury by Unum Group Corporate Secretary J. Paul Jullienne verifying these assertions, as well as organizational chart that does not contain either of these entities.[49] Plaintiffs have not offered any evidence to contradict Jullienne's assertions. While Plaintiffs contend that they have received letters that refer to "Unum, the Benefits Center," Defendants allege, and Jullienne attests, that "The Benefits Center" is any area of the company that handles claims.[50] Defendants further contend, unopposed, that the "Unum" mark at the top of the January 14, 2020 reservation of rights letter sent to Plaintiffs is a trademark, as indicated on the bottom of the letter itself, and the letter was not sent on behalf of Unum, the Benefits Center as Plaintiffs contend, but rather by "Cheryl A Pekala, Lead Benefit Specialist, The Paul Revere Life Insurance Company as administrator for New York Life Insurance Co."[51]

The record evidence currently establishes that, at the time of removal, the amount in controversy was met and Plaintiffs are diverse from New York Life, Paul Revere and the named defendant, Unum Group, which is an actual entity.[52] Based on the foregoing, and particularly Julliene's declaration and the Unum Group organizational chart, which were not opposed or challenged by Plaintiffs, it is sufficiently established that the entity currently referenced as "Unum, the Benefits Group," in the Petitions' substantive allegations is a fictitious entity and/or does not

---

[48] R. Doc. 24, pp. 1-2. Plaintiffs contend that it is too early in the litigation to dismiss Unum Group or to enter into any stipulation as to the addition, dismissal, or liability of the Defendants.

[49] R. Doc. 24-2, *see also* Defendants' Answer at R. Doc. 9, pp. 3-4.

[50] R. Doc. 24, p. 2 *and see id.* at p. 3 referencing R. Doc. 24-1, p. 1; R. Doc. 24-2.

[51] R. Doc. 24, p. 4 and R. Doc. 24-1, p. 5.

[52] While the parties cannot agree to confer subject matter jurisdiction, Plaintiffs do not dispute that the parties are diverse, and the jurisdictional minimum is met.  R. Doc. 26-1, p. 5.

exist and therefore it need not to be considered for the purposes of diversity jurisdiction.[53]  Notably, Plaintiffs have now acknowledged that Unum, the Benefit Group was  "previously, fictitiously named" and have already stated that they will drop that entity from their Complaint.[54]

As analyzed below, Plaintiffs jurisdictional arguments in support of remand are unavailing and the undersigned recommends that remand be denied.  If this Report and Recommendation is adopted, Plaintiffs shall file an amended Complaint deleting all references to "Unum, the Benefit Group" by no later than ten days from the date of the Order adopting this Report and Recommendation.

### C.  Plaintiffs' Jurisdictional Arguments In Support of Remand Are Unavailing

In support of remand, Plaintiffs argue that the motion to deposit funds into the registry established a concursus proceeding, such that the state court case was not removable, and that the prior exclusive jurisdiction doctrine and probate exceptions preclude this Court's exercise of subject matter jurisdiction.  Plaintiff's remand arguments fail.  First, this was not a concursus proceeding in state court (though, even if it was, the case would be removable), nor is it a probate case.  Additionally, ownership of the purported *res* is not necessary to a determination of the claims.

---

[53] *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").  It has likewise been sufficiently established that Unum, the Benefits Center also does not exist, but that entity has not yet been named, and therefore, it also need not be considered for the purposes of analyzing diversity jurisdiction.

[54] R. Doc. 24, pp. 1-2.  *See also* Plaintiffs' Motion to Remand, wherein Plaintiffs acknowledge that Unum, the Benefit Group is fictitious at R. Doc. 26-1, p. 1, referring to "the fictitiously named 'Unum, the Benefit Group.'"

### i. This Is Not a Concursus Proceeding, But a Concursus Proceeding Can Be Removed to Federal Court

Plaintiffs' remand arguments largely flow from a flawed premise--that this matter is a removed *in rem* concursus proceeding.[55] Defendants correctly point out that it is not.[56] Notably, Plaintiffs admit that "they did not seek concursus to resolve the claim of ownership of the $4664.69 [sic, $4,458.65],"[57] which admission seems to contradict their claim that this was a concursus action. Rather, Plaintiffs deposited funds into the state court registry in an effort to avail themselves of the provisions of La. C.C.P. art. 4658 (after deposit, plaintiff is relieved of all liability to all defendants for the money deposited in the registry) and La. C.C.P. art. 4660 (injunctive relief may be granted to plaintiff prohibiting defendants from instituting or prosecuting any other action on the claim involved in the concursus proceeding) so that they could claim that the deposit relieved them of further liability to make premium payments and so that Defendants could not proceed with any litigation.[58] However, these articles do not dictate the answer to the jurisdictional question on remand.[59] Because this matter does not involve competing claims to the funds deposited or a risk that Plaintiffs face liability to, or litigation with, multiple parties, it is not a concursus proceeding.[60]

---

[55] *See, e.g.,* R. Doc. 26-1, pp. 4, 6-9, all referencing "concursus" proceedings and Defendants' alleged failure to acknowledge them.

[56] R. Doc. 29, pp. 4-9.

[57] R. Doc. 26-1, p. 12.

[58] R. Doc. 26-1, pp. 10-12. As Defendants point out, Plaintiffs did not otherwise seek or obtain injunctive relief. R. Doc. 29, p. 12.

[59] Plaintiffs' reliance on *Louisiana Intrastate Gas Corp. v. Muller,* 290 So.2d 888 (La. 1974), is likewise unavailing. R. Doc. 26-1, p. 12 and R. Doc. 32, pp. 5-6. Plaintiffs argue: "The Louisiana Supreme Court has specifically authorized the use of a concursus proceeding for the same purpose applied by the Plaintiffs in Louisiana Intrastate Gas Corp....." However, *Louisiana Intrastate Gas Corp.* was a declaratory judgment action, wherein that court specifically held "this is not a concursus proceeding" (but noted that, even if were considered one, the deposit of the funds was not an admission of liability). 290 So.2d at 895. In Reply, Plaintiffs acknowledged the case does not involve a concursus proceeding. R. Doc. 32, p. 5. Plaintiffs actually rely on *Louisiana Intrastate Gas Corp.* in an attempt to argue that the funds deposited should have prevented Plaintiffs' further liability for premiums and/or cancellation of the Policy.

[60] *See Hibernia Nat. Bank v. Blossman,* 583 So.2d 5, 8 (La. Ct. App.), *writ denied,* 589 So.2d 1067 (La. 1991) ("Hibernia's petition for concursus does not state a cause of action because the petition does not allege competing or

Even if it were a concursus proceeding, that status would not bar removal. In *AAR, Inc. v. Century Inv. Group, LLC,* the U.S. District Court for the Eastern District of Louisiana denied remand of a removed Louisiana concursus proceeding, where the funds were deposited in the state court. After citing the provisions of 28 U.S.C. § 1335, which permit removal of interpleader actions where 1) there is at least $500 in controversy, 2) two or more adverse claimants are diverse, and 3) the funds in dispute have been deposited in the registry of the court, the *AAR, Inc.* court rejected the argument that interpleader jurisdiction did not exist because the funds were deposited into the registry of the state court.[61] Even assuming Plaintiffs' argument is correct--that the state court action was a concursus proceeding--the requirements of an interpleader action under 28 U.S.C. § 1335 would be met: the removed action concerns at least $500 in controversy, the two adverse claimants are diverse, and the funds in dispute have been deposited in the registry. Accordingly, even if the state court action were a concursus proceeding, it was removable, and this court has jurisdiction under 28 U.S.C. § 1335.[62]

---

conflicting claims among the beneficiaries, and the Trustee as impleaded defendants to the action.") *See also id., citing Lent, Inc. v. Lemel Steel Fabricators, Inc.,* 340 So.2d 1035 (La.App. 1st Cir.1976), *writ denied,* 343 So.2d 1075 (La. 1977) (noting that La. C.C.P. art. 4651's requisite of competing or conflicting claims by the interpleaded parties requires more than a mere "vying of payment by a single defendant.").

[61] Nos. 08-07/08-4194, 2008 WL 5264265, at *2, n.11 (E.D. La. Dec. 17, 2008) ("[T]he court has confirmed that … the funds were deposited "in state court" … thus the interpleader requirement of depositing the amount in controversy into the registry of the court was satisfied. Plaintiffs attempt to distinguish *AAR, Inc.* by arguing that the funds were deposited in the state court registry in *AAR, Inc.* after removal, and the fact that the prior exclusive jurisdiction doctrine was not discussed in that case. R. Doc. 32, pp. 6-7. As to the former, the fact that the funds were deposited in the state court registry before removal to federal court appears to bolster the argument that this was a removable action under 28 U.S.C. § 1335 because the requirements of statutory interpleader were met at the time of removal. Further, and as explained below, it has not been shown that the state court had any specialized *in rem* jurisdiction over the funds at the time of removal. As to the latter, Plaintiffs' argument for application of the Prior Exclusive Jurisdiction Doctrine also fails for the reasons explained below.

[62] 2008 WL 5264265, at *2, *citing Usry v. Price,* 325 F.2d 657, 658, n.1 (5th Cir. 1963) (other citations omitted). In *Wiltz v. Welch,* No. 13-420-EWD, 2017 WL 2772089, at *1 (M.D. La. June 26, 2017), which was a removed diversity action that involved a concursus petition filed post-removal, but which invoked Louisiana concursus law, this Court cited *AAR, Inc.* for its holding that a Louisiana concursus proceeding is in the nature of interpleader. *See also Durand v. National Tea Co.,* No. 93-1204, 1993 WL 192204, at *1 (E.D. La. May 27, 1993) (removal of a state court concursus but which also featured a federal question). Herein, the requirements of 28 U.S.C. § 1332 have been met and are not at issue (*see* the section above), so it does not appear to make a difference whether the alleged state court concursus was removable as a rule interpleader pursuant Fed. R. Civ. P. 22 (requiring an independent basis for jurisdiction, including complete diversity between a stakeholder plaintiff and claimant defendants and an amount in controversy

ii.    **The Prior Exclusive Jurisdiction Doctrine And Probate Exception Are Inapplicable**

Under the "Prior Exclusive Jurisdiction Doctrine," "[w]here a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts." Plaintiffs argue that this proposition is mandatory[63] and derives from "the Probate Exception," which, in pertinent part, "bars a federal district court from (1) probating or annulling a will or (2) 'seek[ing] to reach a *res* in custody of a state court' by 'endeavoring to dispose of [such] property.'"[64]  According to Plaintiffs, the state court is currently exercising *in rem* jurisdiction through the concursus over the *res*, *i.e.*, the deposited funds, so that this Court cannot also exercise jurisdiction.[65]  Further, Plaintiffs argue that the Prior Exclusive Jurisdiction Doctrine renders the state court's jurisdiction exclusive, and "[a] Federal Court that is presented with an *in personam* action related to the property in the possession of a State Court may not exercise jurisdiction over the matter if the exercise of jurisdiction would 'as a legal matter wholly dispose of specific property in the custody' of the State Court….The exercise of diversity jurisdiction over the Petitions for Damages herein,

---

exceeding $75,000, exclusive of interest and costs), or as a statutory interpleader pursuant to 28 U.S.C. § 1335, requiring minimal diversity among the claimants, $500 in controversy, and a deposit of funds in the registry of a court).

[63] R. Doc. 26-1, pp. 13-15, *citing Fischer v. American United Life Ins. Co.,* 314 U.S. 549, 554, 62 S. Ct. 380, 382–83, 86 L. Ed. 444 (1942), *citing Lion Bonding & Surety Co. v. Karatz*, 262 U.S. 77, 88, 89, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923). Plaintiffs also argue that La. C.C.P. art. 4660 supports their Prior Exclusive Jurisdiction argument.  R. Doc. 26-1, p. 13.  That Article states: "The court may grant the plaintiff in a concursus proceeding injunctive relief prohibiting the defendants from instituting or prosecuting in any court of this state or of the United States any other action or proceeding on the claim involved in the concursus proceeding."  As noted by Defendants, Plaintiffs did not seek or obtain any injunctive relief in connection with the state court proceedings. R. Doc. 29, pp. 11-12.  Thus, it is unclear how the permissive provisions of Article 4660 would be applicable.

[64] R. Doc. 26-1, pp. 13-14, *citing Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013) (*citing Marshall v. Marshall,* 547 U.S. 293, 311, 126 S. Ct. 1735, 1748, 164 L. Ed. 2d 480 (2006)).

[65] R. Doc. 26-1, pp. 14-16.

would likewise interfere with the State Court's control of the property at issue in the concursus because the Petitions relate to 'the claim involved in the concursus.'"[66]

This argument fails on several grounds. First, and as noted, the removed state court action was not a concursus proceeding. It was filed as an ordinary action related to benefits under a disability insurance policy. The fact that Plaintiffs deposited funds into the state court registry did not change the nature of the proceeding, and the deposit of the funds were, and are, unnecessary to the resolution of the claims alleged by Plaintiffs and Defendants. This Court does not need to disturb the alleged state court *res*, *i.e.*, the deposited funds representing the premiums allegedly owed, in order to rule on the claims asserted.[67] Also, Plaintiffs have asserted other claims against Defendants that have nothing to do with the alleged *res* and seek an ordinary judgment against Defendants for policy benefits. Defendants, in turn, have not made any claims against the deposited funds and do not dispute that Plaintiffs are the owners of the registry funds.[68] Thus, the fact that the state court has possession of funds deposited by Plaintiffs has no effect on this

---

[66] R. Doc. 26-1, p. 17, *citing Architectural Body Research Foundation v. Reversible Destiny Foundation*, 335 F.Supp.3d 621, 640 (S.D.N.Y. Sept. 28, 2018); La. C.C.P. art. 4660; *Karatz*, 262 U.S. at 88–89; *Fisher,* 314 U.S. at 554; and *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 477, 56 S. Ct. 343, 347, 80 L.Ed. 331 (1936). *See also* R. Doc. 32, pp. 3-4.

[67] Contrary to Plaintiffs' argument, even if this Court had to decide the ownership of the funds deposited, it could likely adjudicate that issue without possession of the funds. R. Doc. 26-1, pp. 17-18. *See* § 3631 In Rem and Quasi-in-Rem Actions, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed.) "It is not considered an interference with one court's exclusive control of a *res* for another court to adjudicate the right of an individual to that *res* in a separate *in personam* action, however. An action of this character to establish a right to share in property in the custody of another court may be brought whether the *res* is in the custody of a state or federal court, and the decision is binding on the court that has possession of the property, so long as a decision has not yet been rendered in that court." (*citing Fischer v. American United Life Ins. Co*., 314 U.S. 549, 555, 62 S. Ct. 380, 383, 86 L.Ed. 444 (1942): "When only the first of two suits is *in rem* and the court hearing the second suit can adjudicate personal claims to debts or the right to share in property without disturbing the first court's jurisdiction over the *res*, both actions may proceed," and *Kline v. Burke Const. Co*., 260 U.S. 226, 43 S. Ct. 79, 67 L.Ed. 226 (1922)) (other citations omitted).

[68] R. Doc. 26-1, p. 10. Plaintiffs' authority, *Scarabin v. Drug Enforcement Admin*., 966 F.2d 989, 993 (5th Cir. 1992) at R. Doc. 26-1, p. 15, is factually distinguishable as it involved a federal agency's attempt to exercise *in rem* jurisdiction over property that was seized pursuant to a state court search warrant. As *Scarabin* involved the specific interplay of state and federal criminal seizure laws, it is applicable to the issues raised in the Motion.

proceeding and Plaintiffs' assertion that the state court's control over the funds is necessary to decide the merits of the removed claims or protect the rights of the parties is meritless.[69]

Furthermore, and according to the Fifth Circuit:

> Under the doctrine of prior exclusive jurisdiction, 'when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.*' *Marshall v. Marshall,* 547 U.S. 293, 311, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). As the district court explained, the primary purpose of this doctrine is to prevent jurisdictional disputes brought about as a result of multiple concurrent proceedings. *See Kline v. Burke Constr. Co.,* 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226 (1922).[70]

The Prior Exclusive Jurisdiction doctrine does not apply because the instant matter does not involve concurrent proceedings; rather, this matter involves a lone case removed from state to federal court.[71]    Defendants properly removed the entire action on the basis of diversity jurisdiction, which automatically divested the state court's jurisdiction over this case.  "When a case begins in state court and is later removed to federal court, there are not *concurrent* proceedings. The removal action takes the case from the state court and places it in federal court. Because the state court no longer has jurisdiction over the case, there is no jurisdictional conflict

---

[69] As the deposited funds have no bearing on the jurisdictional issue, Defendants' arguments regarding removal of *in rem* actions and the application of 28 U.S.C. § 1450 are not reached.  R. Doc.  29, pp. 16-19.  However, Defendants correctly point out that courts in this Circuit have recognized that state court *in rem* cases can be properly removed to federal court and have rejected the Exclusive Prior Jurisdiction argument, particularly in removed mortgage foreclosure cases.  *See* R. Doc. 29, p. 19, *citing Rojas v. Wells Fargo Bank, N.A.,* No. A-13-CA-291-SS, 2013 WL 12086780, at *5 (W.D. Tex. Aug. 30, 2013), *aff'd,* 571 F. App'x 274 (5th Cir. 2014) (denying remand based on the Prior Exclusive Jurisdiction Doctrine and holding: *"*This Court and other federal district courts have previously encountered this misguided theory, and held the prior exclusive jurisdiction doctrine is simply inapposite absent multiple concurrent proceedings. *Iqbal v. Bank of Am., N.A.,* No. A–12–CA–938–SS, slip op. at 7–9 (W.D. Tex. Dec. 18, 2012) (order denying motion to remand); *Welk v. GMAC Mortg., LLC,* 850 F. Supp. 2d 976, 996–99 (D. Minn. 2012)."  *See also Iqbal v. Bank of America, N.A.,* 559 F. App'x 363, 366 (5th Cir. 2014) and *Trevarthen v. U.S. Bank Association*, No. A-13-CA-154-SS, 2013 WL 12099973 (W.D. Tex. Mar. 28, 2013) (other citations omitted).
[70] *Iqbal,* 559 F. App'x at 366.
[71] *Iqbal v. Bank of America, N.A.*, No. A-12-CA-938-SS, 2012 WL 11955635, at *5 (W.D. Tex. Dec. 18, 2012), *aff'd,* 559 F. App'x 363 (5th Cir. 2014) (explaining that the doctrine "is not relevant to a lone state court action removed to federal court").

for the law to avoid or resolve. *See* 28 U.S.C. § 1446(d) (once removal is effected, 'the State court shall proceed no further unless and until the case is remanded')."[72]

In *Iqbal*, the district court noted that, "[t]he [Prior Exclusive Jurisdiction] doctrine also applies in the less common situation in which one court has 'continuing jurisdiction' over some property, and may therefore preclude the exercise of jurisdiction 'even in the absence of a pending case.'"[73] However, *Welk*, cited by *Iqbal*, explained:

> The relevant question, then, is not how a case about a piece of property ended up in federal court, but whether there are conflicting attempts to assert jurisdiction over that piece of property. In this case, there is no suggestion that any state court has acquired some form of specialized, continuing jurisdiction over any of plaintiffs' properties. Nor, in their initial memorandum, did plaintiffs identify any other proceedings involving their properties. Instead, plaintiffs' sole argument was that, because *this* case originated in state court, the Court cannot exercise in rem jurisdiction—an argument that, as discussed above, is frivolous.[74]

Therefore, the Prior Exclusive Jurisdiction Doctrine is inapplicable and does not preclude this Court from exercising subject matter jurisdiction.

In a lengthy, somewhat confusing argument discussing the Probate Exception, Plaintiffs also claim that this Court does not have original jurisdiction over this alleged *in rem* proceeding because of the state court's possession of the *res*, and, since the state court's jurisdiction over the *res* is not severable from the removed state court case, the entire case must be remanded.[75] In

---

[72] *Rojas,* 2013 WL 12086780, at *5. Plaintiffs argue that this line of cases is "not determinative," because "these actions involved attempted removal of an action concerning whether an individual litigant had a right to possess property. They did not involve determining ownership rights in a specific piece of property in the possession of state courts." R. Doc. 26-1, pp. 20-21, *citing Wolf v. Deutsche Bank National Trust Company for American Home Mortgage Investment Trust 2007-1,* 745 F. App'x 205, 208 (5th Cir. 2018), *Pittman v. Seterus, Inc.*, No. 14-3852-M BF, 2015 WL 898990, at *2 (N.D. Tex. Mar. 2, 2015), and *Iqbal,* 2012 WL 11955635, at *5 (W.D. Tex. Dec. 18, 2012). Again, Plaintiffs misconstrue the nature of this action. Defendants do not dispute that the deposited funds belong to Plaintiffs, so this case does not require a determination as to the ownership rights in the specific funds held by the state court.
[73] *Iqbal,* 2012 WL 11955635, at *4, *citing Welk,* 850 F.Supp.2d at 997.
[74] *Welk,* 850 F. Supp. 2d at 998.
[75] R. Doc. 26-1, pp. 18-22 (citations omitted).

support of this argument, Plaintiffs primarily rely on a couple of probate cases where derivative claims were raised, which the courts refused to sever and had to remand in light of the Probate Exception.[76]  However, this case does not involve a probate matter, Defendants are not seeking to reach a *res* in the custody of the state court, and the funds in the registry of the state court are not necessary to this Court's resolution of the claims asserted.[77]  As the Fifth Circuit has explained:

> The *Marshall* Court concluded that the federal district court had subject-matter jurisdiction, and the probate exception did not apply, reasoning: "[The claimant] seeks an *in personam* judgment against [the Defendant], not the probate or annulment of a will. Nor does she seek to reach a *res* in custody of a state court." After *Marshall*, the probate exception only bars a federal district court from (1) probating or annulling a will or (2) "seek[ing] to reach a *res* in custody of a state court" by "endeavoring to dispose of [such] property."[10]
>
> As we see it, to determine whether the probate exception deprives a federal court of jurisdiction, *Marshall* requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property. If the answer to both inquiries is yes, then the probate exception precludes the federal district court from exercising diversity jurisdiction. Here, we find the case outside the scope of the probate exception under the first step of the inquiry because the Trust is not property within the custody of the probate court.[78]

This case is likewise outside the scope of the Probate Exception because the deposited funds are not property within the custody of a probate court.  As previously mentioned, the state court's possession of funds deposited by Plaintiffs presents no conflict with this Court's jurisdiction over

---

[76] R. Doc. 26-1, pp. 17-21 and R. Doc. 32, pp. 8-9, *citing Architectural Body Research Foundation v. Reversible Destiny Foundation*, 335 F.Supp.3d 621, 640 (S.D.N.Y. Sept. 28, 2018) (featuring a probate matter) and *Estate of Gordon v. Leidy*, No. 18-266-DMB-JMV, 2019 WL 3347179 (N.D. Miss. July 25, 2019) (featuring a probate matter). *Goncalves By and Through Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237, 1256 (9th Cir. 2017) did not involve a probate matter, but the court rejected the plaintiffs' remand arguments grounded in the Probate Exception and the Prior Exclusive Jurisdiction Doctrine.

[77] *See U.S. v. Bank of New York & Trust Co*., 296 U.S. 463, 478-79 (1936) (contrasting the suit in that case with cases that are "merely to establish a debt or a right to share in property" and finding that the latter would permit an "adjudication which might be had without disturbing control of the state court.").

[78] *Curtis v. Brunsting,* 704 F.3d 406, 409 (5th Cir. 2013).

this case because this Court can decide the claims at bar regardless of the deposited funds or who has possession of them. For all of the foregoing reasons, there are no grounds requiring remand and diversity jurisdiction exists. Therefore, it is the recommendation of the undersigned that Plaintiffs' Motion to Remand be denied.

Because remand is not recommended, Plaintiffs' request for attorney's fees should also be denied.

## III. Conclusion, Recommendations and Order

As federal diversity jurisdiction existed at the time of removal and there are no grounds requiring remand of this matter,

**IT IS RECOMMENDED** that the Motion to Remand,[79] filed by Plaintiffs Mina and Steven Raymond, be **DENIED.** If this Report and Recommendation is adopted, the undersigned **FURTHER RECOMMENDS** that the matter be referred for a scheduling conference.

**IT IS ORDERED** that, if this Report and Recommendation is adopted, Plaintiffs shall file an amended Complaint deleting all references to the fictitious entity Unum, the Benefit Group by no later than ten days from the date of the Order adopting this Report and Recommendation.

Signed in Baton Rouge, Louisiana, on February 23, 2021.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[79] R. Doc. 26.