UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MINA RAYMOND, ET AL.                                              CIVIL ACTION

VERSUS

UNUM GROUP, ET AL.                                       NO. 20-00352-BAJ-EWD

RULING AND ORDER

Before the Court is a **Partial Motion for Summary Judgment (Doc. 55)** filed by Defendants Paul Revere Insurance Company, New York Life Insurance Company, and Unum Group. The Motion is opposed. (Doc. 82). Defendant filed a Reply Brief. (Doc. 116). For the reasons stated herein, Defendant's Motion is **GRANTED** in part.

I. BACKGROUND

This is an insurance dispute. On March 23, 1988, Mina Raymond purchased a disability policy from New York Life. The policy provided that total disability benefits were payable if the insured cannot perform the substantial and material duties of her regular job. (Doc. 55-1, p. 2). It also provided for residual disability benefits payable if Ms. Raymond's loss of income per month was at least 20% of her prior monthly income, and the loss was due to the continuation of injury or sickness. (Doc. 55-1, p. 2). It also provided for social insurance supplement (SIS) benefits that

1

were payable if the insured demonstrated that she applied for and was ineligible to receive government benefits such as Social Security Disability Income (SSDI). (Doc. 55-1, p. 2).

In 1996, Ms. Raymond was diagnosed with Multiple Sclerosis. (Doc. 83, p. 3). In 1997, she began receiving disability benefits because she was unable to work in her regular occupation as a pharmacist. (Doc. 82, p. 3). In June 1997, Defendant New York Life informed Ms. Raymond that her part time work as a pharmacist would not reduce or eliminate her eligibility for Total Disability Benefits. (Doc. 1-1, p. 8). In 2000, Defendant Paul Revere assumed responsibility for the administration of Ms. Raymond's claim and liability for the payment of any benefits owed under the policy. (Doc. 49-1, p. 2). In June 2001, Paul Revere suspended payment of SIS benefits to Ms. Raymond because she did not provide proof to establish that she was ineligible for SSDI benefits. (Doc. 49, p. 2). In January 2012, Paul Reverse began paying Ms. Raymond's SIS benefits but later terminated all benefits in February 2020. (Doc. 49, p. 2). Plaintiffs instituted this action in the 19th Judicial District Court for East Baton Rouge Parish. (Doc. 1-1, p. 18). Defendants subsequently removed this matter. (Doc. 1).

## II.    LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

## III. DISCUSSION

### A. Nonpecuniary Damages

Plaintiffs seek, *inter alia*, nonpecuniary damages for emotional distress, invasion of privacy, tortious interference of contract, and loss of consortium. *See* Doc. 1-1. Defendants assert that Plaintiffs' claims for nonpecuniary damages fail as a matter of law because Louisiana courts have consistently held that such damages are not recoverable in a claim for an alleged breach of an insurance contract. (Doc. 55-1, p. 5). Plaintiffs argue that recovery of nonpecuniary loss is not foreclosed in contract cases. (Doc. 82, p. 15).

Under Louisiana Civil Code article 1998, to recover for nonpecuniary losses arising from a breach of contract, the contract must have been intended to satisfy a nonpecuniary interest and the evidence must show that the defendant must have known that it was intended to satisfy such an interest. La. Civ. Code art. 1998. This Court previously found that insurance contracts, the object of which is the payment of money, are pecuniary in nature. *Suter v. Allstate Indem. Co.*, No. CIV.A. 09-817-JJB, 2011 WL 830528, at *7 (M.D. La. Mar. 3, 2011) (citing *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 202 (La.2008) ("The common purpose of a commercial insurance contract is to provide for the protection of one of the contracting parties, the insured, from economic loss as a consequence of covered hazards—a commercial insurance policy is not designed to gratify nonpecuniary interests, it is meant to protect pecuniary interests."). In fact, this Court has articulated that generally a plaintiff

cannot recover emotional distress damages for a defendant's breach of an insurance contract. *Id.*

However, a plaintiff may recover nonpecuniary damages if she can establish that the defendant intended to trigger emotional anguish by failing to perform its obligations under the contract. *Suter v. Allstate Indem. Co.*, No. CIV.A. 09-817-JJB, 2011 WL 830528, at *7 (M.D. La. Mar. 3, 2011) (citing *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 202 (La.2008)).

The contract between Ms. Raymond and Defendants is an insurance contract. *See* (Doc. 55-3). And the object of an insurance contract is the payment of money. There is no evidence in the record supporting Plaintiffs' argument that Defendants aggrieved them.[1] Because Defendants' motivation appears to be solely monetary in nature, Plaintiffs' claims for nonpecuniary damages under Louisiana law are dismissed.

## B. Punitive Damages under Tennessee Law

Defendants assert that Plaintiffs' claims under Tennessee law should be dismissed. (Doc. 55-1, p. 13). Plaintiffs contend that Tennessee law is applicable here because "at least some of the principal activity exposing Defendants to liability occurred" in that state. (Doc. 82, p. 23).

---

[1] Plaintiffs allege that Defendant attempted to strong-arm them into accepting a settlement to reduce future exposure. They also accuse Defendants of fraud and threatening to pursue a litigation strategy that may result in Plaintiffs' financial ruin. (Doc. 82, p. 7).

The United States Court of Appeals for the Fifth Circuit requires that a district court hearing a diversity suit must apply the choice-of-law rules of the state in which the action is brought. *Williamson Pounders Architects PC v. Tunica Cty., Miss.*, 597 F.3d 292, 295 (5th Cir. 2010) (citation omitted). The rules governing Louisiana's conflict of law analysis in insurance disputes are codified in Louisiana Civil Code articles 3515 and 3537. Article 3515 provides, in pertinent part, that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. The article further provides two factors which the court must consider: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state. La. Civ. Code art. 3515.

Similarly, Article 3537 specifically concerns contracts or conventional obligations and provides that in determining which state law applies, the Court must also consider, in addition to the factors articulated in Article 3515, the following: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies

6

referenced in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other. La. Civ. Code art. 3537. These provisions are intended to identify the state whose policies would be most seriously affected if its laws were not applied to the issue at hand. *Carter v. Youngsville II Hous. LLLP*, No. CV 16-01496, 2018 WL 2410804, at *3–4 (W.D. La. May 25, 2018) (citation omitted). "[T]he law of the state applicable to the insurance contract is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of the factors set forth in those Civil Code articles." *Id.*

Here, Plaintiffs are domiciled in Louisiana, the Unum Group is domiciled in Tennessee, and Paul Revere is domiciled in Massachusetts. (Doc. 55-5, p. 1). Ms. Raymond's claim was administered by Unum Group employees, on behalf of Paul Revere, out of the claim office located in Massachusetts. (Doc. 55-1, p. 13). Moreover, when Ms. Raymond's benefits were terminated, she was employed in Louisiana, the policy was delivered in Louisiana, the benefits were paid in Louisiana, and the denial of benefits occurred in Louisiana. (Doc. 55-1, p. 14). The only connection to Tennessee is the parent company of Defendant Paul Revere, who had nothing to do with the administration of Ms. Raymond's claim. Accordingly, Louisiana is the state "whose policies would be most seriously impaired if its law were not applied" in this case. La. Civ. Code arts. 3515, 3537.

7

## C. Future benefits owed under Policy

Defendants contend that Plaintiffs cannot recover future benefits under an anticipatory breach of contract theory. (Doc. 55-1, p. 15). Plaintiffs assert that Louisiana law provides for recovery of damages for anticipatory breach where a civil defendant repudiates an installment contract in bad faith.

Anticipatory breach of contract applies when an obligor announces he will not perform an obligation which is due sometime in the future. *Pittman v. Standard Ins. Co.*, No. CIV.A. 07-3790, 2009 WL 113292, at *9 (E.D. La. Jan. 15, 2009). On this point, the United States District Court for the Eastern District of Louisiana found that a plaintiff was not entitled to recover future benefits under a disability policy. *Pittman v. Standard Ins. Co.*, No. CIV.A. 07-3790, 2009 WL 113292, at *9 (E.D. La. Jan. 15, 2009). In that case, the plaintiff suffered a major back injury and the policy in question paid disability coverage only so long as the insured could not perform the important duties of his occupation. *Id.* The court noted that although it is highly unlikely that the plaintiff's back problems would resolve in the future, a possibility nonetheless remained. *Id.* Here, unlike in *Pittman*, the medical evidence of record indicates that it is literally impossible for Ms. Raymond to recover from her multiple sclerosis. In fact, Defendants relied on the assumption that Ms. Raymond's disability was permanent when calculating their future exposure to her.

8

### D. Medical Expenses not provided for in Policy

Defendants also allege that Plaintiffs cannot recover for medical expenses and aggravation of Ms. Raymond's multiple sclerosis because they are unforeseeable and not recoverable. (Doc. 55-1, p. 10). Plaintiffs assert that medical expenses are recoverable based on the tort theories of recovery. (Doc. 82, p. 22)

This Court determined that a plaintiff was not able to recover medical expenses after he suffered a heart attack during a power outage. *McMorris v. Gulf States Utilities Co.*, 700 F. Supp. 867, 869 (M.D. La. 1988). The plaintiff argued he was distressed as a result of the outage and that he suffered cardiac arrest and was entitled to medical expenses. *Id.* The Court did not agree, reasoning that the plaintiff's cardiac arrest was unforeseeable because the defendant, a power company, likely had no access to the plaintiff's medical records. *Id.*

Here, the Court finds it hard to believe that it was unforeseeable that Ms. Raymond's medical condition would be aggravated. Unlike in *McMorris*, Defendants here were Ms. Raymond's disability carrier and had full access to Ms. Raymond's medical records. Moreover, the evidence shows that Defendants used information regarding her medical condition to make various decisions about the payment of her disability benefits.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Partial Motion for Summary Judgment (Doc. 55) is GRANTED in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for nonpecuniary damages and for punitive damages under Tennessee law are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that in all other respects Defendants' Motion (Doc. 55) is **DENIED.**

Baton Rouge, Louisiana, this 31st day of March, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA