## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

MINA RAYMOND, ET AL.                         CIVIL ACTION NO.

VERSUS                                       20-352-BAJ-EWD

UNUM GROUP, ET AL.

## ORDER

Before the Court is the Second Motion to Compel ("Motion"),[1] filed by Plaintiffs Mina ("Mina") and Steven Raymond (collectively "Plaintiffs"), which is opposed by Defendants The Paul Revere Life Insurance Company, Unum Group ("Unum"), and New York Life Insurance Company (collectively "Defendants").[2] The Motion seeks an order compelling Defendants to produce a series of withheld communications/emails that were listed as attorney-client privileged on Defendants' privilege logs. As explained below, the privilege logs provided by Defendants are sufficient to establish attorney-client privilege as to most documents for which Plaintiffs seek to compel production and Defendants have not waived the privilege. However, it is not clear whether the attorney-client privilege applies to the entirety of the communications at issue in Bates Nos. 11 and 18. Defendants will be ordered to submit those two communications to the Court under seal for *in camera* review.

### I.  BACKGROUND

On July 21, 2021, a telephone conference was conducted with the parties to discuss discovery issues, including a prior motion to compel most of the same communications Plaintiffs currently seek (identified *below*).[3] Because Defendants' original privilege log was insufficient,

---

[1] R. Doc. 126 and *see* Plaintiff's reply brief at R. Doc. 133.
[2] R. Doc. 130.
[3] R. Docs. 51 and 53. The Court has conducted several conferences with the parties in this case, particularly regarding discovery disputes.

they were ordered to review prior authority from the Court and to produce an adequate privilege log to Plaintiffs.[4]  As Defendants were ordered to produce a Local Rule 26(c)-compliant privilege log, the prior motion to compel was terminated without prejudice to re-urging.[5]

Plaintiffs ultimately re-urged the instant Motion,[6] which seeks to compel Defendants to produce the following communications which were withheld on the basis of attorney-client privilege: Bates Nos. 146 and 213, regarding Mina's earnings, her eligibility for SSDI benefits, and application of an SIS Rider; Bates Nos. 590-92, regarding Mina's eligibility for benefits under the SIS Rider and applicability of total versus residual disability policy provisions; Bates Nos. 2725-2728 and 2845, regarding Mina's income and application of total versus residual policy provisions; and Bates No. 2783, regarding release of Mina's claim file.[7] Plaintiffs also newly seek to compel production of two communications listed on Unum's supplemental privilege log, Bates Nos. 11 and 18, regarding "scheduling in the course of obtaining legal advice."[8] In the alternative, Plaintiffs seek *in camera* review of the documents by the Court.[9]

---

[4] R. Doc. 53, citing *Firefighters' Retirement System, et al. v. Citgo Group Limited, et al.*, No. 13-373, 2018 WL 326504 (Jan. 8, 2018).  The insufficient log is at R. Doc. 51-7.

[5] R. Doc. 53.

[6] As noted during the April 4, 2022 conference with the Court, the Motion was filed one day late, which was due to Plaintiffs' counsel's belief that the deadline was March 31, 2022.  However, the untimeliness was mooted when the discovery deadline was extended by one month during the conference since the parties were ordered to produce additional information.  R. Doc. 119 (Scheduling Order) and R. Doc. 128.

[7] R. Doc. 126-1, pp. 2-5 and *see* Defendants' responses and objections to Plaintiffs' discovery requests at R. Doc. 126-5, pp. 8-9, R. Doc. 126-6, pp. 15-16 and their "revised privilege log" at R. Doc. 126-9, pp. 1-6. The Bates-labeled documents sought by Plaintiffs are not in the record. Therefore, it appears that Plaintiffs seek to compel the production of documents that were entirely withheld (as opposed to redacted).

[8] R. Doc. 126-9, pp. 9, 13-14. By its title, this privilege log was produced with Unum's supplemental responses to Plaintiffs' first set of discovery requests ("supplemental privilege log").  According to Plaintiffs, the supplemental responses were produced without a pleading on "November 2, 2001," an apparently mistaken reference to November 2, 2021. R. Doc. 126-1, p. 4.  In any case, the two emails now sought to be compelled (Bates No. 11 and 18) were not at issue in Plaintiff's original Motion to Compel, presumably because the production of the supplemental privilege log post-dated the original motion.  Defendants' opposition memorandum does not address these two emails. Furthermore, while Plaintiff alleges that Bates No. 18 relates to "review of the ultimate rationale for demanding the collection of over $225,000 worth of back benefits," the privilege log description says that the email relates to "scheduling." *Compare* R. Doc. 126-1, p. 10 and R. Doc. 126-9, p. 13.

[9] R. Doc. 126, p. 2.

Plaintiffs generally contend that the communications are discoverable as bearing on the alleged bad faith of Defendants and Defendants' investigations, evaluations, and coverage determinations, and/or could support Plaintiffs' argument that Defendants have waived and/or are estopped from revisiting the evaluation of Mina's income or employment.[10] Plaintiffs also dispute the applicability of the attorney-client privilege to the withheld documents, arguing that the communications are not between an attorney and a client, and that the privilege does not apply because the attorneys acted as claims administrators.[11] Plaintiffs also argue that, even if the privilege did apply, it has been waived.[12]

Following the filing of the instant Motion, a conference was held with the parties during which various discovery disputes were discussed and resolved, with the exception of Plaintiffs' request for the referenced communications.[13] As discussed during the conference, it was unclear at that time whether Defendants' supplemental privilege log, which had not been formally challenged by Plaintiffs, was sufficient.[14] The parties were advised that *in camera* review of the documents is not warranted unless the privilege log descriptions are determined to be insufficient.[15] Defendants were given an opportunity to formally oppose the Motion, and to brief the adequacy of the privilege log.

Defendants assert that their privilege logs now comply with Local Rule 26(c) and provide sufficient information to establish the existence of the attorney-client privilege.[16] Defendants contend that the communications were all between Unum in-house counsel and Unum

---

[10] R. Doc. 126-1, pp. 5-10.
[11] R. Doc. 126-1, pp. 13-16.
[12] R. Doc. 126-1, pp. 16-19.
[13] R. Doc. 128.
[14] R. Doc. 121-9 and R. Doc. 128.
[15] R. Doc. 128, again referring to *Firefighters' Ret. Sys.,* 2018 WL 305604, at *3 (…this court will not consider an *in camera* review of the documents listed on the Citco Defendants' privilege log without first determining the sufficiency of the log descriptions themselves.").
[16] R. Doc. 130, pp. 3-5.

employees,[17] and that the in-house attorneys did not act as claims administrators regarding Mina' claim; rather, they provided privileged legal advice.[18] Defendants also argue that the privilege has not been waived.[19]

## II. LAW AND ANALYSIS

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege.  Article 506(B) of the Louisiana Code of Evidence states:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication….

Under Louisiana law, the party asserting the privilege has the burden of proving its applicability.[20]

In *Equal Employment Opportunity Commission v. BDO USA, LLP* ("*BDO*"), the Fifth Circuit left the initial determination regarding whether the privilege log was sufficient to the district court on remand, but set forth some general rules regarding the assertion of privilege.[21] The Circuit explained that "[f]or a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or

---

[17] R. Doc. 130, pp. 5-6.
[18] R. Doc. 130, pp. 6-7.
[19] R. Doc. 130, pp. 7-9.
[20] *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La. Sept. 9, 1987).
[21] 876 F.3d 690 (5th Cir. 2017). While Louisiana law governs the applicability of the attorney-client privilege, this Court has explained that federal law is instructive, "given the 'federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege.'"  *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, No. 11-633, 2014 WL 29451, at *6, n. 7 (M.D. La. Jan. 3, 2014), citing *Akins v. Worley Catastrophe Response, LLC*, No. 12–2401, 2013 WL 796095, at *11 (E.D. La. Mar. 4, 2013); *Soriano v. Treasure Chest Casino, Inc.*, No. 95–3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996) (federal "common law and Louisiana statutory law are materially similar in this case in regards to attorney-client privilege").  As such, this Order also considers federal law.

assistance in some legal proceeding.'"[22]   The party claiming the privilege bears the burden of

proof.   Ambiguities with respect to whether the elements of the privilege have been met are

construed against the proponent of the privilege.   Once the privilege is established, the burden

shifts to the party seeking the documents to prove an applicable exception.[23]

"[A] privilege log's description of each document and its contents must provide sufficient

information to permit courts and other parties to 'test[ ] the merits of' the privilege claim" and

"courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory

and insufficient to carry out the proponent's burden of establishing attorney-client privilege."[24]

Attorney client privilege does not extend to materials assembled in the ordinary course of business,

or which provide purely factual data.[25]

Pursuant to Local Civil Rule 26(c):

> A party withholding information claimed privileged or otherwise
> protected must submit a privilege log that contains at least the
> following information: name of the document, electronically stored
> information, or tangible things; description of the document,
> electronically stored information, or tangible thing, which
> description must include each requisite element of the privilege or

---

[22] 876 F.3d at 695, citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original).

[23] 876 F.3d at 695 (citations omitted).

[24] *BDO,* 876 F.3d at 696-97 (internal citations omitted).   *See also Chemtech Royalty Assocs., L.P. v. United States*, No. 05-944, 2010 WL 11538363, at *7 (M.D. La. Sept. 23, 2010) (explaining that when in-house counsel have responsibilities extending beyond rendering legal advice, "courts require a clear showing that the attorney was acting in his professional legal capacity" but that when "non-legal services such as…business advice that must be given along with legal advice in order for the legal advice to be understood by a client, are mixed with legal services, it does not render the legal services any less protected by the privilege.   In fact, they are both protected when they are inextricably intertwined."); *Swoboda v. Manders*, No. 14-19, 2016 WL 2930962, at *5, n. 41 (M.D. La. May 19, 2016) (recognizing that not all communications between an attorney and his client are privileged, "'[f]or example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer.'"), citing *In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997)); *U.S. v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) (explaining that work papers produced by an attorney in the course of preparing client's tax returns were not privileged "because although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service. Communications relating to that service should therefore not be privileged, even though performed by a lawyer."); *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) (holding that communications between employees and counsel were attorney-client privileged where the information was provided in order for the company to obtain legal advice during an internal investigation, the employees knew this was the purpose, and the communications were considered highly confidential).

[25] *See United States. v. Louisiana*, No. 11-470, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015).

protection asserted; date; author(s); recipient(s); and nature of the privilege.[26]

## A. Defendants' Privilege Logs Sufficiently Establish Attorney-Client Privilege as to Most of the Documents Sought

The log entries in Defendants' revised and supplemental privilege logs for the communications sought to be compelled show the date of the document, the author and recipient of the document (all in-house counsel and employees of Unum),[27] and whether anyone was copied. Additionally, each entry includes a description of the document on which privilege is claimed.[28] These descriptions do more than generally state that the communications were for purposes of rendering or obtaining "legal advice." For each entry, the subject matter of the purported legal advice is also provided. For example, for Bates No. 146, the communication is described as "providing legal advice regarding insured's eligibility for SSDI benefits and applicability of policy SIS rider."[29] For Bates No. 2725, the communication is described as "requesting legal advice regarding insured's earnings and application of total vs. residual disability benefit policy

---

[26] Local Rule 26(c) (emphasis added).

[27] The evidence submitted in support of the Motion and other evidence in the record appears to show that Unum employees, on behalf of Paul Revere (Unum's subsidiary), handled processing of Mina's claim and the decision to terminate benefits. *See* Unum's response to Plaintiff's Interrogatory No. 2 at R. Doc. 126-7, p. 3 (Paul Revere is Unum's subsidiary), Paul Revere's responses to Plaintiff's Interrogatory No. 1 at R. Doc. 126-6, p. 4 ("Ms. Pekala is employed by Unum Group, employees of which administered Plaintiff's claim on behalf of The Paul Revere Life Insurance Company as administrator for New York Life Insurance Co."), Paul Revere's Response to Interrogatory No. 13, at R. Doc. 126-6, p. 11 confirming that several other individuals named on the log are Unum employees, Unum's Response to Plaintiff's Interrogatory No. 4 ("Unum Group further states Cheryl Pekala, Lead Benefit Specialist, made the determination that Plaintiff no longer qualifies for Total Disability or Residual Disability benefits under the terms and conditions of the Policy. Ms. Pekala is employed by Unum Group.") at R. Doc. 126-7, p. 4 and *see* C. Pekala deposition transcript at R. Doc. 79-2, wherein Pekala testified regarding the claims handling and decision to cease paying Mina's benefits, as well as G. Pinkham deposition transcript at R. Doc. 79-3, pp. 6, 9-10. Based on this information, Plaintiffs' argument that there is no attorney-client relationship between the parties to the communications at issue is unclear. R. Doc. 126-1, pp. 13-14. Defendants assert, and the privilege log supports, that all the communications were between Unum in-house counsel and Unum employees, such that the requirement of a communication between client and counsel appears satisfied. *See Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, No. 02-1133, 2007 WL 9700756, at *4 (M.D. La. Apr. 9, 2007) ("It has been recognized that in-house or general counsel's communications with their 'client,' their employer, are covered by the attorney-client privilege set forth in La. Code Evid. art. 506(B), if the other elements of that statute are met.") (citations omitted). Plaintiff has not cited any evidence to contradict the information submitted on this issue. R. Doc. 126-1, pp. 2-4 and 126-9.

[28] R. Doc. 126-9, pp. 2-7, 9, and 13.

[29] R. Doc. 126-9, p. 2.

provisions."[30]   For Bates No. 590-92, the communication is described as "providing legal advice

regarding Raymond's eligibility for benefits under the SIS rider and applicability of total vs.

residual disability policy provisions."  While the document descriptions do appear related to efforts

to determine Mina's eligibility for benefits, the legal advice sought and obtained related to the

interpretation of policy provisions considering the factual information provided.  It is an essential

function of a lawyer to help his or her client interpret contractual provisions.  The fact in-house

lawyers were asked to, and did so, in the context of an investigation into Mina's eligibility for

benefits under an insurance policy does not convert their role to a non-legal one.[31]   Plaintiffs'

argument that it does, is misplaced.[32]   In short, with regard to all but two documents sought (Bates

---

[30] *See* description of Bates No. 2725, R. Doc. 126-9, p. 3.

[31] *See Miniex v. Housing Authority*, No. CV 4:17-00624, 2019 WL 2524918, at *4 (S.D. Tex. Mar. 1, 2019) ("'[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.' *Upjohn Co*., 449 U.S. at 390. *See also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010) ('[F]actual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege.' (second alteration in original)). '[T]he attorney-client privilege protects confidential employee communications made during a business's internal investigation led by company lawyers.' *Kellogg Brown*, 756 F.3d at 756. '[I]f one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply ... regardless of whether an internal investigation was conducted pursuant to a company compliance program required by statute or regulation, or was otherwise conducted pursuant to company policy.' *Id*. at 760."). *See also, In re Intuniv Antitrust Litigation*, No. 16- 12396, 2018 WL 6492747, at * 6 (D. Mass. Dec. 10, 2018) ("When employees communicate with in-house counsel for the purpose of obtaining advice about what they must disclose in regulatory filings, *the interpretation of contracts*, the status and likely outcome of litigation, or the company's compliance with antitrust laws, the employee and the company, to which the privilege belongs, will generally expect those communications to be confidential." (citations omitted; emphasis supplied).

[32] For example, while Plaintiff cites the non-controlling case *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 13-284, 2014 WL 2217808, at *2 (E.D. Pa. May 29, 2014), on reconsideration in part, No. CIV.A. 13-284, 2014 WL 3887750 (E.D. Pa. Aug. 7, 2014) for the proposition that: "investigation of whether a coverage defense would apply is the business of an insurer" (R. Doc. 133, p. 4, n. 6), what that court actually held was that the retained attorney's "log entries and emails related to the scheduling and taking of the EUO's [examination under oath, i.e., an exam to gather information from an insured], including the collection of information for the EUO's, are part of the ordinary business function of claims investigation and therefore fall outside the attorney-client privilege.  However, any communication seeking counsel's advice remains privileged. Also, once the EUO was taken, **counsel's observations and opinions concerning the content of the statement are privileged, as it was legal advice regarding the propriety of the denial of the claim.**" *Id.* (emphasis added).  Further, the *Henriquez-Disla* decision cites to *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. 05–3158, 2006 WL 1320067, at *4 (D.N.J. May 12, 2006), in which the New Jersey district court held that documents were privileged, following an in camera review, because "counsel had not 'performed any independent investigation of Plaintiff's claim, but rather provided legal advice regarding its claim, including strategy for addressing any potential challenges to Defendants' declination of such claim,'" which also tends to contradict Plaintiff's representation of the holding of *Henriquez-Disla*.

Nos. 11 and 18),[33] the privilege log description contains "sufficient information to allow a court or party to assess the applicability of the privilege or protection."[34]  The attorney-client privilege applies to those documents, such that further review is not necessary.

### B.  Defendants Did Not Waive the Privilege

Because Defendants' privilege logs adequately establish attorney-client privilege over all but two of the documents, Plaintiff has the burden of establishing that an exception to the privilege applies as to these documents. Plaintiff asserts that Defendants waived the privilege either by placing the privileged communications at issue, *i.e.*, anticipatory waiver, or because the attorneys involved in the communications engaged in fraudulent activity, *i.e.*, the crime-fraud exception.[35] Neither of these exceptions apply.

The Louisiana Supreme Court has recognized that waiver of the attorney-client privilege may occur when a party places privileged communications "at issue."[36]  The placing-at-issue waiver occurs when the waiving party pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial to prevail.  The placing-at-issue waiver is an application of the anticipatory waiver principle, and under this principle, the court must concern itself with whether the privilege holder has "committed himself to a course of action that will require the disclosure of a privileged communication."[37] There has been no showing that Defendants have partially revealed any specific privileged communication entitling Plaintiffs to discovery of the remainder, nor has there been a showing that Defendants have committed

---

[33] These documents are addressed in Section II(C).

[34] *Chemtech Royalty Assocs., L.P. v. United States*, Nos. 05-944, 06-258, and 07-405, 2009 WL 854358, at *3 (M.D. La. March 30, 2009), citing Fed. R. Civ. Proc. 26(b)(5) and *Coes v. World Wide Revival, Inc.*, 2007 WL 2774205 (M.D. Fla. 2007).

[35] R. Doc. 126-1, pp. 16-19.

[36] *Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London*, 18-604 (La. App. 5 Cir. 2/19/19); 2019 WL 692963 citing *Smith*, 513 So.2d at 1145.

[37] *Zydeco's II*, 2019 WL 692963, citing *id.* at 1145-46 and *see id.* at 1141: "A pleading must inevitably require the introduction of a privileged communication at trial to constitute a waiver."

themselves to a course of action that will require the disclosure of privileged communications.[38]

Rather, Defendants state that they have not filed pleadings that partially disclose privileged

communications, nor do they intend to introduce any privileged communications at trial.[39]

Plaintiffs offer no response in reply and their original argument that, because attorneys were

consulted regarding a defense to coverage, the disclosure of these privileged communications is

necessarily required, is incorrect.[40] Unlike the parties in *Smith* and *Biggers*, Defendants have not

alleged that the coverage decisions were made on advice of counsel. In short, Defendants have

not put the privileged communications at issue.

Plaintiffs' argument that the crime-fraud exception requires production of the privileged

documents fares no better. In order for the crime-fraud exception to vitiate the privilege, "the court

must make a finding that the attorney-client relationship was intended to further continuing or

future criminal or fraudulent activity."[41] "The party challenging the privilege must (1) make an

independent *prima facie* case that a crime has been committed, and (2) then demonstrate that the

privileged information bears a relationship to the alleged crime or fraud."[42] This exception applies

---

[38] In *Smith,* 513 So.2d at 1146-47, the plaintiff testified about communications she had with her current attorney and intended to rely on those communications at trial to establish the reason for her untimely malpractice suit against her former attorneys. As such, the Louisiana Supreme Court held that the plaintiff waived the privilege as to other communications with her current attorney on the same topic. However, the *Smith* court noted that if the plaintiff chose not to rely on her past privileged communications at trial, she could invoke the privilege. *Biggers v. State Farm Ins. Co.,* No. 92-2004, 1993 WL 408375, at **1-2 (E.D. La. Oct. 5, 1993), is similar. The *Biggers* court held that if the adjusters asserted that their failure to pay the underlying claim was based on the advice of counsel, then those communications were discoverable; however, the adjusters could choose not to rely on the advice of counsel as a basis for failing to pay the plaintiff's claim and assert attorney/client privilege as to that advice. Plaintiffs have not pointed to any particular partially disclosed privileged communications in this case, nor any instance where Defendants have asserted a decision based on advice of counsel. Plaintiffs' other authority is distinguishable. In *AMA Disc., Inc. v. Seneca Specialty Ins. Co.,* No. CV 15-2845, 2016 WL 3186493, at *1 (E.D. La. June 8, 2016), the court specifically noted that: "some materials in the claim file may be privileged," but the defendant had not produced a privilege log and thus was ordered to produce "all non-privileged materials in its claim file." The court did not reach the issue of waiver because it was unclear if a privilege applied. In *Zydeco II,* the court ordered *in camera* review of documents, and made no finding regarding waiver because it was unclear if the privilege applied. 2019 WL 692963 at *6.
[39] R. Doc. 130, p. 8.
[40] R. Doc. 126-1, p. 17.
[41] *Arabie v. CITGO Petroleum Corp.,* 2009-0569 (La. 5/15/09), 8 So. 3d 558, 559 (citations omitted).
[42] *Id.*

in rare circumstances.[43] Plaintiff has not made a *prima facie* showing that any Unum in-house attorneys or any Unum employee was engaged in fraudulent activity or was intending to engage in future fraudulent activity.  At most, Plaintiff alleges the "time frame involved *indicates*" that Defendants engaged in the misrepresentation of policy terms with the assistance of their in-house counsel, and that "these attorneys *potentially*" attempted to cover up or conceal questionable conduct.[44]  However, these allegations are merely supposition lacking any evidentiary support, which fails to make a *prima facie* showing.[45]

### C.  Two Documents Require *In Camera* Review

The two documents where the privilege log is not clear that the purpose of the communications was the rendition of legal advice are Bates Nos. 11 and 18.[46]  According to the privilege log descriptions, these documents are regarding "scheduling in the course of obtaining legal advice."[47] While these documents may contain privileged information, characterizing the communications as related to "scheduling" is not sufficient to meet Defendants' burden. Accordingly, for these two communications,[48] Plaintiffs' Motion will be granted in part and an *in camera* review will be conducted.  Defendants shall submit the documents withheld to the Clerk of Court, as instructed below, on or before October 21, 2022 for *in camera* review.

---

[43] *See, e.g., Covey v. Colonial Pipeline Co.*, Nos. 18-1121; 19-923; 19-1507, 336 F.R.D. 514 (N.D. Ala. Aug. 4, 2020), citing *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018).

[44] R. Doc. 126-1, p. 19 (emphasis added).

[45] *See In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005) ("Allegations in pleadings are not evidence and are not sufficient to make a *prima facie* showing that the crime-fraud exception applies.")

[46] For the first time in Reply, Plaintiffs seek production of additional documents on the supplemental privilege log, Bates No. 13-17, *see* R. Doc. 126-9, pp. 9-12 (*same*, R. Doc. 126-8, pp. 22-26).  However, because a request to compel these documents was not raised in the Motion, it is not considered.  *See, e.g., Mack v. Benjamin,* No. 13-552-JWD, 2014 WL 7359054, at *6 (M.D. La. Dec. 23, 2014) (declining to consider requests to compel discovery responses raised for the first time in a reply brief).

[47] R. Doc. 126-9, pp. 9, 13-14.

[48] R. Doc. 126, pp. 1-2, listing Bates Nos. 11 and 18 withheld from Defendants' Supplemental Discovery Responses.

### III.   CONCLUSION

The privilege logs provided by Defendants are sufficient to establish attorney-client privilege as to most documents for which Plaintiffs seek to compel production and Defendants have not waived the privilege. However, it is not clear whether the attorney-client privilege applies to the entirety of the communications at issue in Bates Nos. 11 and 18, which are characterized on the privilege log as related to "scheduling." Therefore, Defendants will be ordered to submit these documents to the Clerk of Court via hard copy for *in camera* review.

Accordingly,

**IT IS ORDERED** that the Second Motion to Compel,[49] filed by Plaintiffs Mina and Steven Raymond, is **GRANTED IN PART. By no later than October 21, 2022**, Defendants The Paul Revere Life Insurance Company, Unum Group, and New York Life Insurance Company shall submit to the undersigned, via delivery to the Clerk of Court, **a hard copy** of the emails listed as Bates No. 11 and 18 on R. Doc. 126-9, pp. 9, 13, in a **sealed envelope** for the Court to conduct an *in camera* review.  The Court will file the documents **under seal with appropriate restrictions**.

Signed in Baton Rouge, Louisiana, on October 17, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] R. Doc. 126.